# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

MICHAEL R. MOSIER,      )
                            )
      Plaintiff,      )
                            )
v.                        )        CV420-020
                            )
GEORGIA DEPARTMENT    )
OF CORRECTIONAL        )
HEALTHCARE/AUGUSTA    )
UNIVERSITY HOSPITAL,   )
                            )
      Defendant.    )

## ORDER AND REPORT AND RECOMMENDATION

The Court previously afforded *pro se* plaintiff Michael R. Mosier an opportunity to amend his 42 U.S.C. § 1983 complaint concerning medical care he received while incarcerated. *See* doc. 20.  He requested additional time, doc. 22, and has now filed his Amended Complaint, doc. 23.  The Court **GRANTS** his motion for additional time, *nunc pro tunc*, to March 31, 2021.  Doc. 22.  The Court will, therefore, proceed to screen his Amended Complaint.  *See* 28 U.S.C. § 1915A(a).[1]

---

[1] Section 1915A requires dismissal of any claim that: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  The Court

## I.    Background

Mosier alleges that he suffered a stroke while incarcerated at Riverbend Correctional Facility, in Milledgeville, Georgia.  *See* doc. 23 at 2.  The specific claims arising out of the allegedly insufficient treatment he received at Riverbend were previously severed and transferred to the United States District Court for the Middle District of Georgia.  *See generally* doc. 9.  He was treated for the stroke and related symptoms at Augusta University Hospital.  Doc. 23 at 3.  After his discharge he was transferred to Augusta State Medical Prison ("ASMP").  *Id.*  While at ASMP, he suffered another stroke and a pulmonary embolism.  *Id.* at 3-4.  He was subsequently transferred back to Riverbend Correctional Facility, *id.* at 4-5, and then "subjected to a retaliatory transfer to Washington State Prison, *id.* at 6.  Again, claims arising at Washington State Prison were severed and transferred to the Middle District.  *See generally* doc. 9.

---

applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A.  *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001).  Allegations in the complaint are, therefore, taken as true and construed in the light most favorable to the plaintiff.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n. 1 (11th Cir. 2011).  Conclusory allegations, however, fail.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The allegations arising in this District commence with Mosier's next transfer, to Costal State Prison ("CSP"), where he "was told during the intake screening . . . that his medication prescriptions and diet/disability profiles would be discontinued pending approval and reinstatement by a CSP physician." Doc. 23 at 6. He was seen by a physician's assistant, identified only as "Ms. Hall," who informed him that she could not conduct the required evaluation unless he signed a "Health Services Request Form," which included a consent to a $ 5.00 copay. *Id.* at 7. When he refused to sign the form because of the copayment consent, Hall refused further evaluation or treatment. *Id.* Although Hall's evaluation ceased, Mosier alleges that his "intake screening" was completed by defendant Dr. Awe approximately four weeks later and "Defendant Awe reinstated all of Plaintiff's afore-mentioned prescribed medications , . . . diet profiles (except for the Low Fat / Low Cholesterol diet), and his physical therapy treatments." *Id.* at 14. The remainder of Mosier's Amended Complaint details his dispute with CSP officials concerning the validity of the copayment policy, and its application. *See id.* at 15-25. The details of those allegations are discussed below.

3

Mosier's Amended Complaint includes considerable factual detail, but the connection between the alleged facts and the asserted claims is often obscure.  *See generally* doc. 23.  The Court has an obligation to liberally construe his pleading.  *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks and citation omitted)).  So construed, the Court can discern several general categories of claims.  First, he appears to contend that the copayment policy is unconstitutional.  *See, e.g.,* doc. 23 at 10, 26 (seeking an injunction against "GDC SOP VH07-0001," which imposes the copayment requirement).  Second, he alleges that various defendants have been deliberately indifferent to his serious medical needs, in violation of the Constitution's Eighth Amendment.  *See, e.g., id.* at 9 ("Defendant Hall's actions / inactions displayed deliberate indifference . . . to Plaintiff's serious medical needs . . .").  Third, he appears to allege that the defendants have retaliated against him for complaints about the administration of the copayment requirement.  *See, e.g., id.* at 10 (alleging that "CSP health care personnel, including Defendants Awe and Hall . . . retaliate against prisoners who

4

challenge/refuse to sign said co-pay agreement . . .”), 11 (alleging that Defendant Georgia Department of Correctional Healthcare failed to “adequately monitor and supervise the customs, policies, practices, and procedures of CSP Health Services personnel” to prevent, among other alleged misconduct, “deprivation of necessary healthcare services as punishment in retaliation for exercising [plaintiff’s] right to free speech in seeking redress of grievances”), 12 (alleging Defendant Georgia Department of Corrections failed to “adequately monitor and supervise the customs, policies, practices, and procedures of CSP Health Services personnel” to prevent, among other alleged misconduct “deprivation of healthcare services as punishment in retaliation for exercising [plaintiff’s right to free speech in seeking redress of grievances . . .”), 24 (alleging “Defendant Gregory is an active party to the policy, practice, or custom of . . . the retaliatory actions taken against those prisoners who oppose [abuse of the copayment policy].”).  Fourth, and finally, he asserts various claims for alleged violations of “GDC SOP and state law.” *See, e.g., id.* at 9 (alleging Defendant Hall “failed to exercise her affirmative duties [ ] in accordance with GDC SOP and state law . . .”), 11 (Defendants GDC and GCHC . . . failed with deliberate indifference and/or gross negligence to

exercise the affirmative duty to deliver health care to Plaintiff in accordance with Defendant GDC promulgated SOP and state law (O.C.G.A. § 42-5-2) . . .").

## II. Georgia Department of Corrections and Georgia Department of Correctional Healthcare

To the extent that Mosier asserts any claim against the Georgia Department of Corrections or Georgia Department of Correctional Healthcare, they are immune from suit in this Court under the Eleventh Amendment. As the United States Court of Appeals has held, unequivocally, "[t]he Georgia Department of Corrections enjoys immunity from suit in a federal court under the Eleventh Amendment." *Jones v. Georgia Dep't of Corrs.*, 763 F. App'x 906, 907 (11th Cir. 2019). This Court has held that the Georgia Department of Correctional Healthcare is similarly immune. *See Butler v. Georgia Dep't of Corrs.*, 2018 WL 6729647, at * 5 (S.D. Ga. Dec. 21, 2018) (Baker, J.) (identifying "Georgia Correctional Healthcare" as "an instrumentality of the State of Georgia" and dismissing claims on Eleventh Amendment grounds); *see also Fitzpatrick v. Georgia Dep't of Corrs.*, 2012 WL 5207474, at *7 (S.D. Ga. Sept. 12, 2012) (finding that "Georgia Correctional Healthcare" is not an entity subject to suit). Immunity extends to any claim for injunctive

or retrospective declaratory relief that Mosier asserts. *See, e.g., Green v. Mansour*, 474 U.S. 64, 73 (1985) (holding the Eleventh Amendment bars declaratory judgment that past state conduct was unconstitutional); *Cory v. White*, 457 U.S. 85, 91 (1982) ("[T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction . . . ."). Accordingly, all claims against the Georgia Department of Corrections and Georgia Department of Correctional Healthcare should be **DISMISSED**.

## III.   Copayment Requirement

Mosier's request that the Court enter a declaratory judgment against the Department of Corrections that the copayment policy "serves no legitimate penological interest as promulgated and/or administered and, therefore, is unconstitutional," doc. 23 at 25-26, might not be subject to dismissal under the Eleventh Amendment, at least against some defendant.[2] *See, e.g., Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d

---

[2]  The proper defendant in a suit to enjoin enforcement of an unconstitutional law or policy is the state officer responsible for enforcement of the offending policy. *See Summit Medical Assocs., P.C.*, 180 F.3d at 1336 ("[T]here is a long and well-recognized exception [to Eleventh Amendment immunity] for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." (citation omitted)). Mosier has not sued any official allegedly responsible for instituting the copayment policy, however. *See generally* doc. 23. Since, as discussed below, Mosier's claim that the copayment policy is unconstitutional fails, the Court need not consider the question of whether a proper defendant could be identified. *Cf. Sims v. Florida*, 862 F.2d 1449, 1460 (11th Cir. 1989) (substituting officials for named state agencies to

Case 4:20-cv-00020-RSB-CLR   Document 25   Filed 02/01/22   Page 8 of 22

1326, 1336-37 (11th Cir. 1999). Regardless of whether Mosier might identify a proper defendant, however, courts have held that such policies are not unconstitutional. *See, e.g.,* 1 Michael B. Mushlin, Rights of Prisoners § 4:40 (5th ed. 2021) (noting that constitutional challenges to copayment plans "have not been successful."). The United States Court of Appeals for the Third Circuit has explained that "[t]here is nothing unconstitutional about a prison program that requires an inmate to pay for a small portion of his medical care so long as the provision of needed medical care is not conditioned on an inmate's ability or willingness to pay." *Harper v. Tritt*, 726 F. App'x 101, 103 (3d Cir. 2018); *see also Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) ("We reject the plaintiffs' argument that charging inmates for medical care is *per se* unconstitutional."); *Reynolds v. Wagner*, 936 F. Supp. 1216, 1228-29 (E.D. Penn. 1996) (finding co-payment requirement did not violate due process and collecting cases); *Hutchinson v. Belt*, 957 F. Supp. 97, 100 (W.D. La. 1996) (concluding that prison medical copayment policy did not violate the Fourteenth Amendment's Equal Protection Clause). Mosier does not

_____

avoid Eleventh Amendment immunity); *see also id.* at 1461 (Tjoflat, J. dissenting) (describing the substitution as *sua sponte* action).

8

allege that he is unable to pay the copay.[3]  To the extent that he claims

that the copayment policy violates his constitutional rights, his claim

should be **DISMISSED**.  *See, e.g., Bingham v. Nelson*, 2009 WL 2982831,

at * 3 (M.D. Ga. Sept. 11, 2009) ("Although plaintiff cannot be denied

health care based upon his inability to pay, plaintiff makes no allegation

that he is unable to pay, and, therefore, the imposition of a $5.00

copayment is not prohibited" and dismissing claim as frivolous).

## IV.   Eighth Amendment Claims

Mosier has also failed to allege that any defendant was deliberately

indifferent to his serious medical needs, in violation of the Eighth

Amendment.  *See, e.g., Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir.

2003).   Although he alleges that defendant Hall's termination of his

examination because he would not agree to the copayment "displayed

deliberate indifference . . . to Plaintiff's serious medical needs," doc. 23 at

9, he concedes that he was subsequently evaluated by defendant Awe, *id.*

at 14.  Thus, although Hall's conduct may have resulted in a disruption

---

[3]  His allegations that copayments have been illegitimately deducted from his prison
account contradict any inference that he is unable to pay.  *See, e.g.,* doc. 23 at 15
(alleging that Mosier copayments were "assessed . . . against Plaintiff's prison trust
account . . . ."), 20 (describing "withdrawals" from Mosier's prisoner trust account).

in the treatment provided, Mosier does not allege any adverse effect from that delay.  In the absence of such an allegation, any Eighth Amendment claim against Hall should be **DISMISSED**.  *See, e.g., Compton v. McDuffie Cnty. Det. Ctr.*, 2014 WL 640492, at * 3 (S.D. Ga. Feb. 18, 2014) (where a plaintiff "claims that a delay in medical treatment amounted to deliberate indifference, he must allege 'some detrimental effect of the delay in medical treatment . . . .'" (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogated in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002))).

To the extent that Mosier alleges that Defendant Awe was deliberately indifferent to his serious medical needs, he similarly fails to state a claim.  He alleges that Dr. Awe was deliberately indifferent to his serious medical needs by incorporating allegations from several grievances, which he either quotes or summarizes in the Amended Complaint.  *See* doc. 23 at 21-23.  Specifically, he alleges that he cannot wear the standard prison issue "rubber crocks," and instead requires "what's referred to as a 'soft-shoe' [or] (tennis shoe) . . . ."  *Id.* at 21.  He alleges in the grievance that Dr. Awe refused to provide the alternative shoes "[b]ecause [Mosier] refused" to pay a copayment.  *Id.*  The only

consequence of that refusal identified in the grievance is that he slipped while climbing stairs and "was barely . . . able to drop what [he] was holding . . . and grab the rail to catch [himself]." *Id.* at 22. A near accident is simply not a detrimental effect of Dr. Awe's refusal to provide shoes that supports a deliberate indifference claim. *See Compton*, 2014 WL 640492, at * 3. Accordingly, that claim should be **DISMISSED**.

Mosier's claims of Defendant Gregory's deliberate indifference are entirely conclusory. After alleging her supervisory role, which the Court discusses below, he simply alleges that her "actions and inactions were the result of both overt activity and failure to act, that her failure to do what was required . . ., as well as her overt activities, which were unlawful and harmful, display deliberate indifference and/or gross negligence, and were substantial factors leading to the violation of Plaintiff's . . . Eighth . . . Amendment United States Constitutional rights." Doc. 23 at 24; *see also id.* ("Defendant Gregory's conduct displayed deliberate indifference and gross negligence, and caused Plaintiff to suffer the deprivation of his . . . Eighth . . . Amendment Constitutional rights 'under color of state law.'"). Such conclusory allegations are not sufficient to state a claim upon which relief can be

11

granted.  *See, e.g., Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citation omitted)).  To the extent that the Amended Complaint includes some factual allegations concerning Gregory's supervisory role, those allegations alone cannot support a vicarious deliberate indifference claim, even if a primary deliberate indifference claim had been pleaded, which it has not.  *See, e.g., Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) ("It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." (internal quotation marks and citations omitted)).  Any Eighth Amendment claim against Gregory should, therefore, be **DISMISSED**.

## V.   Retaliation Claims

Mosier also alleges that defendants Hall and Awe retaliated against him for filing grievances objecting to the copayment policy.  *See* doc. 23 at 10 (alleging that "Defendants Awe and Hall . . . retaliate against prisoners who challenge / refuse to sign said co-pay agreement by denying

or delaying necessary medical service / treatment; discontinuing prescribed (indefinite) treatment plans . . . ."), 17 (listing various treatments and diagnostics that Mosier claims were refused in retaliation for his grievances), 22 (alleging that in September 2020, Dr. Awe "retaliated by deliberately failing to order [medically necessary] new shoes . . . ."). He also alleges that Defendant Gregory, in her supervisory capacity, is liable for the retaliation. *Id.* at 24 (alleging that Gregory "has had subjective awareness of a need to train and/or supervise in the area of co-pay fee assessment policy and procedure, and yet, made a deliberate choice not to take any action. Plaintiff asserts, therefore that Defendant Gregory is an active party to . . . the retaliatory actions taken against prisoners who oppose" the implementation of the policy).

As the Eleventh Circuit has explained: " 'First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment.'" *Stallworth v. Wilkins*, 802 F. App'x 435, 440 (11th Cir. 2020) (quoting *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)). "To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the

inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retalitatory action [ . . .] and the protected speech [ . . .]." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotation marks, alterations, and citation omitted).

Mosier's first retaliation claim is that Defendant Hall delayed his initial intake screening in retaliation for his refusal to agree to the copayment policy. *See* doc. 23 at 7, 10. However, he only alleges that he complained about the policy verbally before she discontinued the screening. *See id.* at 7. Courts have expressed skepticism that verbal complaints, as opposed to formally filed grievances, are constitutionally protected speech. *See Daker v. Head*, 2019 WL 11005452, at *19 (S.D. Ga. Dec. 20, 2019) ("[V]erbal complaints by inmates, without more, are likely not constitutionally-protected speech."), *adopted in relevant part by* 2020 WL 5269802, at *5 (S.D. Ga. Sept. 4, 2020); *Hoever v. Caper*, 2014 WL 6674490, at *2 (N.D. Fla. Nov. 25, 2014) (identifying "ample reasons which support limiting 'protected speech' of a prisoner to the contours of filing a grievance."); *Martin v. Hurley*, 2014 WL 7157336, at *2 (E.D. Mo.

Dec. 15, 2014) ("Prisoners have no constitutionally protected right to confront staff and discuss issues with them . . . ."). Even assuming that his complaints about the policy might be protected speech, his allegations show that Hall's discontinuing her examination was a result of his refusal to sign the form, not a complaint about the policy. *See* doc. 23 at 7 ("When Plaintiff stated: 'Well, I can't sign this [*i.e.* the "Health Services Request Form" including an agreement to pay the copayment] then,' Defendant Hall said: 'Well, we're finished here,' and terminated the medical interview."). Thus, there is no causal connection alleged between Hall's refusal to continue the evaluation and any even-arguably protected speech. Similarly, his allegation that Awe's refusal to order his new shoes was retaliatory is allegedly related to Mosier's "refus[al] to pay for chronic care treatment," doc. 23 at 22, not any constitutionally protected speech.

The remaining allegations against both Hall and Awe are simply too general and conclusory to adequately allege retaliation. There are numerous allegations that Mosier filed formal grievances about the copayment policy. *See, e.g.*, doc. 23 at 9. Those grievances were protected speech. *See, e.g., Thomas v. Lawrence*, 421 F. App'x 926, 928 (11th Cir.

2011) (citing *Boxer X v. Harris*, 437 F.3d 1107, 1112 (2006) ("A prisoner's filing of a grievance concerning his conditions of his imprisonment is protected speech under the First Amendment."). However, Mosier alleges no facts that establish a causal connection between those grievances and any of the adverse activities he alleges, as related to any particular defendant. "[A] plaintiff is required to do more than make 'general attacks' on a defendant's motivations and must articulate 'affirmative evidence' of retaliation to prove the requisite motive," *Jackson v. Assistant Warden*, 2018 WL 7858414, at * 2 (11th Cir. Dec. 6, 2018) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). The closest Mosier comes to identifying specific actions that *could* be causally connected to the grievances is the list of treatments and diagnostics he alleges he was denied in retaliation for filing grievances. *See* doc. 23 at 17. However, he only alleges that those denials were effected by "CSP health care personnel." *Id.* That kind of general allegation is not sufficient to allege a causal connection between conduct undertaken by unidentified "personnel" and any protected speech.

His allegation that Gregory is liable for retaliation also fails. First, as discussed above, she cannot be held liable based solely on her

supervisory role.  *See, e.g., Hartley*, 193 F.3d at 1269.  However, courts recognize that supervisors may be liable for constitutional violations that they did not directly participate in "when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation," including "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so."  *Id.* (internal quotation marks and citation omitted).  "In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights."  *Id.* (internal quotation marks, alterations, and citation omitted).

Mosier's allegations of Gregory's liability for the alleged retaliation appear to be based on the theory that she had notice of a constitutional violation and failed to correct it or that she imposed an unconstitutional policy.  *See* doc. 23 at 23-24.  However, despite Mosier's disagreement with the copayment policy, he has failed to allege that it is unconstitutional.  Gregory's awareness of his complaints about that policy, then, cannot support her liability.  *See id.* at 24 (alleging that

Gregory failed to act "in the area of co-pay fee assessment policy and procedure"). His contention that "the numerous Confidential Offender Grievances Plaintiff . . . filed relating to [his complaints about the copayment policy, support Gregory's] subjective awareness of a need to train and/or supervise," *id.*, does not establish that she was aware of a "history of widespread abuse." *Hartley*, 193 F.3d at 1269. Even assuming that allegation is sufficient to allege her subjective awareness of anything,[4] Mosier has failed to allege either an unconstitutional policy or a history of widespread abuse. As discussed above, he has not sufficiently alleged any causal connection between constitutionally protected speech, as opposed to his refusal to comply with the copayment policy, and any defendant's refusal to provide healthcare. Accordingly, Mosier's claim that Gregory is liable for retaliation, in her supervisory capacity, should be **DISMISSED**.

## VI.   Claims arising from state law and prison procedure

---

[4] There is no allegation in the Amended Complaint that Gregory is in any way responsible for inmate grievances. *See, e.g.,* doc. 23 at 9 (alleging grievances were to be "forward[ed] to Ms. Cynthia Rivers, Chief Counselor/Grievance Coordinator . . .), 23 (identifying Gregory's alleged "duties and responsibilities" without alleging any responsibility for reviewing inmate grievances). It is, therefore, not entirely clear why Mosier alleges that his filing those grievances is sufficient to establish her awareness of his complaints.

Mosier's complaint alleges various instances of "negligence," defendants' failure to comply with "Defendant GDC SOP and state law," and a specific violation of a Georgia statute imposing a duty to provide inmate healthcare. *See, e.g.,* doc. 23 at 8 (allegations against Defendant Hall), 11 (alleging "Defendants GDC and GCHC . . . failed with deliberate indifference and/or gross negligence to exercise the affirmative duty to deliver health care to Plaintiff in accordance with Defendant GDC promulgated SOP and State law (O.C.G.A. § 42-5-2) . . ."), 15 (allegations against Defendant Awe), 24 (allegations against Defendant Gregory).  All such claims should be **DISMISSED**.

First, as discussed above, any claim against the Georgia Department of Corrections or the Georgia Department of Correctional Healthcare are precluded by the Eleventh Amendment.  Second, any violation of or noncompliance with prison regulation does not give rise to a § 1983 claim. *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (prison regulations are "primarily designed to guide correctional officers in the administration of a prison," but they are "not designed to confer rights on inmates"); *Matthews v. Moss*, 506 F. App'x 981, 984 (11th Cir. 2013) (district court properly dismissed prisoner's claim based on alleged

failure to follow prison procedures); *Jones v. Schofield*, 2009 WL 902154, at *3 (M.D. Ga. Mar. 30, 2009) ("Prison regulations and Standard Operating Procedures do not confer federal rights to prisoners that may be enforced or redressed in a § 1983 action.").  Finally, to the extent that Mosier alleges any viable state law claim against any non-immune defendant, the Court should decline to exercise supplemental jurisdiction over those claims because he has failed to allege any viable federal claim. In such circumstances, dismissal of state claims is "strongly encourage[d] or even require[d]," notwithstanding the Court's discretion to exercise supplemental jurisdiction over them.   *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999).  Accordingly, any claim allegedly arising from state law or violations of GDC policies should be **DISMISSED**.

## VII.  Conclusion

Mosier's Amended Complaint should be **DISMISSED**.[5]  All claims against the Georgia Department of Corrections and Georgia Department

---

[5]  Despite the lack of any apparent basis for viable amendment, plaintiff's opportunity to object to this Report and Recommendation within fourteen days of service, *see infra*, affords him an opportunity to resuscitate his case.  He may also submit a Second Amended Complaint during that period, if he believes it would cure the legal defects discussed above. *See Willis v. Darden*, 2012 WL 170163, at *2 n.3 (S.D. Ga. Jan. 19, 2012) (citing *Smith v. Stanley*, 2011 WL 1114503, at * 1 (W.D. Mich. Jan. 19, 2011)).

of Correctional Health are precluded because both defendants are immune from suit under the Eleventh Amendment.  All of his claims against those agencies should, therefore, be **DISMISSED**.  To the extent that Mosier's contention that the copayment policy at issue is unconstitutional could proceed against some defendant, he fails to state a claim upon which relief can be granted.  Any such claim, therefore, should also be **DISMISSED**.  Finally, to the extent that he asserts that defendants Hall, Awe, or Gregory violated his Eighth or First Amendment rights, he has failed to state a claim upon which relief can be granted.  Those claims, therefore, should also be **DISMISSED**.  To the extent that Mosier asserts a claim, pursuant to 42 U.S.C. § 1983, arising from any defendant's alleged failure to comply with prison policy or procedure, he fails to state a claim upon which relief can be granted. Those claims, therefore, should also be **DISMISSED**.  Finally, to the extent that Mosier alleges any claims under state law, the Court should decline to exercise supplemental jurisdiction over them.  Those claims, therefore, should also be **DISMISSED**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B)

and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED,** this 31st day of January, 2022.

Christopher L. Ray
_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA